## BALDWIN v. WHEELER ET AL.

1. **Assignment:** FRAUD. Evidence considered which was *held* insufficient to support a claim that an assignment of a bond for a deed was procured in fraud of the assignor.

*Appeal from Cedar District Court.*

SATURDAY, DECEMBER 7.

IN 1852 the plaintiff became the owner of the north-east quarter, the east half of the north-west quarter, and the north-west quarter of the north-west quarter of section 29, township 82 north, of range 3 west, containing two hundred and eighty acres.

October 4, 1873, Ludwig Burning obtained a tax deed for all of said property, and on the 2d day of January, 1874, he conveyed it to J. W. Drury.

On the 8th day of June, 1874, the plaintiff entered into a contract with J. W. Drury for the purchase of said land, and

procured from him a bond for a deed and a lease for said premises, the bond and lease being contained in one paper. The consideration named in the bond for the purchase of the land is three thousand three hundred dollars and thirty-three cents; one-third payable in two years, one-third in four years, and one-third in six years from the date of the bond, with interest at the rate of ten per cent per annum, payable annually. J. W. Drury binds himself in the penal sum of seven thousand dollars to execute and deliver to plaintiff a deed of quit-claim for the premises, if he shall well and truly pay the interest on each of the notes executed for the purchase money, annually, and pay the principal of each note as it becomes due. The lease provides that it is to be in force during the time given for the payment of the purchase money; "provided that a failure to pay the interest on each of said notes annually as it becomes due by the terms thereof, or a failure to pay the principal sum of either of said notes as it becomes due, or a failure to pay promptly any and all taxes and assessments levied or to be levied on said lands, or a failure to keep the fences and other improvements on said land in good repair, shall, at the option of said Drury, terminate this lease, and the bond of said Drury to convey said land shall be void, and the said Drury shall be under no obligation to convey said lands to the said Baldwin, but may enter into possession of said lands, and the said Baldwin shall forfeit all payments made by him. And it is especially understood that time is of the essence of this contract, and that the said Baldwin, by a failure to make any of the payments herein stipulated, or to perform any of his covenants and agreements herein set forth, forfeits all rights under this contract."

The plaintiff paid the interest due on this contract June 8, 1875. When the first note became due, June 8, 1876, for the purpose of raising money to pay it plaintiff executed to A. B. Oakley an assignment of this bond, as follows:

"For a valuable consideration I hereby assign and set over

to A. B. Oakley all my right, title and interest in and to the within bond and lease from J. Wilson Drury."

Oakley not having the money to advance in person entered into an arrangement with H. C. Piatt to procure the money from him, and on the said 8th day of June, 1876, assigned his interest in said bond, as follows:

"For value received I do hereby sell, assign, transfer and set over to H. C. Piatt, of Cedar county, Iowa, all my right, title, interest, claim and demand in and to the within bond, lease and contract."

On this assignment Piatt advanced one thousand four hundred and forty-four dollars and forty-four cents, Oakley agreeing to pay therefor, at the end of the year, one thousand eight hundred and ninety-four dollars and forty-four cents. At the same time the following written contract was entered into:

"The undersigned here stipulates to and with A. B. Oakley, of Cedar county, Iowa, upon the payment of one thousand eight hundred and ninety-four dollars and forty-four cents, within one year from this date, to assign to him a certain bond given by J. Wilson Drury to Henry Baldwin, and by Baldwin assigned to Oakley; bond bearing date of June 8, 1874, for the conveyance of two hundred and eighty acres of land therein described, upon the payment of certain amounts therein named. It is further stipulated that in case any litigation arises touching this contract, whereby the said amount of one thousand eight hundred and ninety-four dollars and forty-four cents is not paid in one year from date, then said amount bears interest at ten per cent from maturity until paid, with an attorney's fee of one hundred dollars for any litigation that may arise under this agreement.

"H. C. PIATT."

Indorsed on this writing is the following:

"It is further agreed by the undersigned that in case the Henry Baldwin farm of two hundred and eighty acres should pass into the hands of H. C. Piatt absolutely, and become his

Baldwin v. Wheeler.

property, then the said H. C. Piatt is to pay A. B. Oakley out of the sale of said farm eight hundred dollars.

"H. C. PIATT."

The money realized from Piatt was paid to Drury in satisfaction of the first note, and the interest at that time due. At the time of the assignment of the bond to Oakley, he and the defendant Wheeler were law partners. About the 11th of September, 1876, they dissolved partnership, and Oakley executed to Wheeler an assignment of his interest in the Piatt agreement, as follows:

"I assign all my right, title and interest in the within agreement to Charles E. Wheeler, and he is to pay this amount or not, as he sees fit, but to hold me harmless in the premises.

"September 11, 1876.

"A. B. OAKLEY."

On the 12th day of December, 1876, Henry Baldwin and Charles E. Wheeler entered into a written agreement, as follows:

"Know all men, by these presents, that for and in consideration of the covenants hereinafter contained I, Henry Baldwin, party of the first part, hereby sell and assign to Charles E. Wheeler, party of the second part, all my right, title and interest in and to a certain bond given by J. Wilson Drury to the said first party for the conveyance of a certain farm of two hundred and eighty acres therein described, bond bearing date of June 8, 1874; and said second party hereby agrees that, in consideration of the above, he, the said second party, will promise for the said first party an extension of time on a certain note given by said Baldwin to one Charles Smith, which note is secured by chattel mortgage.

"HENRY BALDWIN,
"CHARLES E. WHEELER."

Afterward Charles E. Wheeler bought the Smith note, referred to in the above agreement, and Baldwin executed a further assignment as follows:

"Know all men, by these presents, that in consideration of

VOL. L—4

an extension of time on a note of five hundred dollars, given by me to Charles Smith, and now assigned to Charles E. Wheeler, I, Henry Baldwin, hereby sell and assign to the said Wheeler all my right, title and interest in and to a certain bond given by J. Wilson Drury to Henry Baldwin, bearing date of June 8, 1874, for the conveyance of two hundred and eighty acres of land therein described. Signed this 23d day of December, 1876.

"HENRY BALDWIN."

On the 27th day of January, 1877, Wheeler and the defendant Samuel Keith entered into a contract as follows: "It is hereby stipulated and agreed by and between Charles E. Wheeler, of the county of Cedar and State of Iowa, of the first part, and Samuel Keith, of said county and State, of the second part, that, whereas, the said first party holds the right to redeem or pay for a certain farm known as the Henry Baldwin farm, and described in a certain bond for a deed given by one J. Wilson Drury (in whom the legal title now is) to the said Henry Baldwin, said bond bearing date of June 8, 1874, said right to pay for said farm and take a deed for the same belonging to Wheeler, by virtue of a certain contract given by one H. C. Piatt to one A. B. Oakley, and by Oakley assigned to said Wheeler, and also by virtue of an assignment of the before mentioned bond for deed by the said Henry Baldwin to the said Charles E. Wheeler: It is, therefore, stipulated and agreed that the said Wheeler hereby sells, assigns, and forever quit-claims all his right, title and interest in the before mentioned bond for a deed, and in all the said farm of two hundred and eighty acres, to the said Samuel Keith, and hereby empowers said Keith to take a deed for the whole farm of two hundred acres, as stipulated in the before mentioned bond for deed given by Drury to Baldwin; and it is hereby stipulated on the part of said Samuel Keith that, for and in consideration of the foregoing, the said Keith shall pay the sum of four thousand dollars on the one claim now held by H. C. Piatt, and the two notes yet unpaid, given

Baldwin v. Wheeler.

by Henry Baldwin to J. Wilson Drury—the amount yet due, after the payment mentioned, on said claims, whatever it may be, to be paid by said Wheeler; all of the above payments to be made by the parties themselves at any time within thirty days from the date of this contract. And it is further stipulated that the said Keith shall pay the said Wheeler, in notes secured by mortgage (notes to be on one Peter Onstott and one J. W. Thomas), the sum of thirty-four hundred dollars, and a note on himself, due on or before two years from this date, for fourteen hundred dollars, the receipt of which note is hereby acknowledged. And it is further stipulated that, whereas, there is a part of said farm of two hundred and eighty acres now contracted to said Onstott and Thomas, now, therefore, the said Keith agrees to and with the said Wheeler that he (Keith) will give said Wheeler a quit-claim deed for said contracted land, to-wit: The north-west forty of said farm of two hundred and eighty acres, and the two forties next east of said north-west forty of said farm; and the said Wheeler agrees to and with the said Keith to make warranty deeds for said four [three?] forties to the said Onstott and Thomas, as soon as Keith gives deed to Wheeler; all the foregoing to be in thirty days from this date. The taxes due on said farm to be paid in equal parts by Keith and Wheeler." Under this agreement Keith advanced the money to pay Piatt, and to pay Drury the amount and interest of the two remaining notes.

On the 29th day of January, 1877, Piatt assigned all his interest in the bond in question to Charles E. Wheeler, and authorized him to receive a deed for the land upon complying with the terms of the bond.

On the 30th day of January, 1877, J. Wilson Drury conveyed all of said land, by quit-claim, to Samuel Keith.

On the 1st day of February, 1877, Samuel Keith and wife executed to Charles E. Wheeler a mortgage on the north-east quarter of section 29, for one thousand four hundred dollars. On the same day Samuel Keith executed to Charles E. Wheeler

a quit-claim deed for the east half and the north-west quarter of the north-west quarter of said section. On the same day Wheeler and wife executed to J. W. Thomas a warranty deed for the east half of the north-west quarter, and to Peter Onstott for the north-west quarter of the north-west quarter of said section. On the same day Thomas executed to Wheeler a mortgage on the land conveyed to him to secure one thousand three hundred dollars, and Onstott executed to Wheeler a mortgage upon the land conveyed to him to secure seven hundred dollars.

When Baldwin assigned to Oakley there was an unsatisfied mortgage to David Hyde on the north-east quarter of said section, dated March 10, 1860, for nine hundred and seventy dollars, and another mortgage on said quarter section to Emma Hyde, dated January 8, 1867, for one thousand seven hundred and eighty dollars. The north-west quarter of the north-west quarter of said section was conveyed by sheriff's deed to C. T. Wheeler, March 4, 1873. The value of the two hundred and eighty acres is about ten thousand dollars.

The plaintiff alleges that the assignment was made to Oakley as plaintiff's agent and attorney, in order that he might borrow money to pay off the first Drury note, and pledge the bond as security for one year; that it was agreed between plaintiff and Oakley that if plaintiff could not raise the money to redeem the bond by June 8, 1877, then Oakley might redeem, and, by paying off Drury, have the place; that pursuant to this agreement Oakley, as the agent and attorney of plaintiff, borrowed the sum before referred to of H. C. Piatt, assigned the bond as security for the loan, and paid off the first payment and all the interest to Drury; that at the time Oakley assigned the Piatt agreement to Wheeler, Wheeler was fully informed of Oakley's agreement, and was merely substituted in Oakley's place; that Wheeler represented to plaintiff that it would be better to owe all the money in one place, and that if plaintiff would assign the Drury bond for a deed of the premises, Wheeler would get the money and pay

off all the indebtedness on the place, and wait five years at ten per cent; that plaintiff did not read the assignment, and Wheeler did not read to plaintiff that part of the assignment which says that the consideration was to get an extension of time on the Smith note, and that Wheeler fraudulently inserted that clause in the assignment without plaintiff's knowledge or consent; that Wheeler, disregarding his agreement, confederated with the defendant Keith to pay off the indebtedness and take the land to themselves, and that Keith, Thomas and Onstott all had notice of plaintiff's rights in the property.

The plaintiff prays that the deeds from Drury to Keith, from Keith to Wheeler, and from Wheeler to Thomas and Onstott, be set aside, and the plaintiff reinstated in all his rights in said property; and, if plaintiff is not entitled to this relief, that he have judgment against Wheeler for seven thousand dollars. The court dismissed the plaintiff's petition as to the defendants J. W. Thomas and Peter Onstott, and decreed that the defendant Samuel Keith holds the rest of the land in trust for plaintiff, and that he convey the same to plaintiff upon the payment to Keith of the sum of one hundred and eighty-nine dollars and fifty-eight cents, and that, if this sum be not paid in sixty days, a special execution issue for its collection. The defendants Keith and Wheeler appeal.

*Wolf & Landt*, for Keith, appellant.

*Piatt & Carr*, for Wheeler, appellant.

*Cook & Richman*, for Onstott and Thomas.

*Oakley & Jamison*, for appellee.

DAY, J.—It may be conceded that the assignment was made by plaintiff to Oakley for the purpose and under the circumstances alleged by plaintiff; but from a careful examination of the testimony, we feel constrained to hold that the claim of plaintiff respecting the

1. ASSIGNMENT: fraud.

assignment of the bond to Wheeler is not sustained by the
evidence. The assignment from Baldwin to Wheeler expressly
states that it is made in consideration of Wheeler agreeing
to procure an extension of time on a note and mortgage for
five hundred dollars given to Charles Smith. The plaintiff
does not himself testify with any positiveness or distinctness
to any fraud perpetrated upon him. He admits that the
assignment was handed to him; that he looked it over the
best he could, and tried to read it as understandingly as he
could. Respecting the assignment, Wheeler testified as fol-
lows:

"On the 12th of December, 1876, I took a new assign-
ment of the Drury contract from Baldwin. The assignment
and that writing expressed the whole contract in relation
to the assignment. *  *  *  *  There were several present.
I remember S. L. Lage, W. S. Angood, and James Carlin
were present in the office, and I think others. The assign-
ment was read over to Mr. Baldwin by myself and W. S.
Angood. After I wrote it I read it aloud to Mr. Baldwin,
and handed it to him and told him to read it. He read a
part—I should think more than half—of it aloud, then said
he could not see it very well, and handed it to W. S. Angood,
who began at the beginning and read it all to Mr. Baldwin,
who then signed it."

This witness further testified that there never was any
conversation between Baldwin and himself in which it was
agreed or suggested that, in taking the assignment of the
Drury bond, witness was acting as agent or attorney, or in
any way, for Baldwin, or that the assignment should be for
any other purpose than as therein expressed, and that the
only consideration for the assignment was the purchasing of
the Smith note and mortgage, and giving plaintiff an exten-
sion of time thereon.

W. S. Angood, who was present when the assignment was
executed, testified as follows: "I recollect of hearing a con-
versation between Baldwin and Wheeler on that day in rela-

tion to assigning the Drury bond to Wheeler. Baldwin wanted to know if he could get him an extension of time on the Smith note. Wheeler told him he would get extension by getting the note as pay for the bond that he assigned. Baldwin said he would. Wheeler drew up the assignment and read it to Baldwin, and handed it to Baldwin and asked him to read it himself. Baldwin had it in his hands awhile, then said he could not read it very well himself, and asked me to read it for him. I did so, and handed it back to him. Mr. Baldwin said it was all right, and signed it. * * * * * * * There was nothing said about Baldwin assigning the bond to Wheeler to enable him to borrow money, or anything to that effect, nor anything about the Smith note going in as indebtedness against the farm, or Baldwin's having five years to pay it in."

James Carlin testified as follows: "I was in Wheeler's office December 12, 1876. I went there that day to pay him a note I owed him. Mr. Angood and Mr. Baldwin were in the office when I went there. I think they were waiting for Mr. Wheeler, who had just gone outside to see somebody. I heard Mr. Wheeler and Mr. Baldwin talking about the Smith note. Mr. Wheeler said he would get him an extension of time if he had to trade with Mr. Smith. Mr. Baldwin was to give Mr. Wheeler a bond which they had in their hands for getting the extension. An assignment was made and read over. I think Wheeler had it and gave it to Angood, who read it over to Baldwin and explained it to him, so I could understand what it was. I did not hear anything that day about Wheeler acting as agent for Baldwin to borrow money for him, or anything of the kind."

Baldwin is without corroboration except from the deposition of Philip Farrington, which was suppressed. Even if this be considered, there is a very clear preponderance of evidence that the assignment was fully and fairly read over to Baldwin, that he executed it understandingly, and that the real and only consideration is expressed therein.

It is said that it is unreasonable that Baldwin would give up his interest in so valuable a property for the mere extension of time on a note of five hundred dollars. But it must be remembered that forty acres of the land had been sold at sheriff's sale, and that one hundred and sixty acres of it are very heavily incumbered by mortgage. These mortgages and this sheriff's sale would attach to the land whenever the title became vested in Baldwin. Besides, there was a large amount of taxes delinquent. The land was not worth very much more than the liens against it. We are satisfied from the whole testimony that Baldwin had despaired of ever being able to discharge the liens and hold the land, and that he regarded the procuring of an extension on the Smith note, which was secured by a chattel mortgage, as really that much gained. We think the assignment from Baldwin to Wheeler of the Drury bond expresses the only consideration upon which it was executed; that the evidence shows there was no fraud in its procurement, and that it divests Baldwin of all interest in the property. It follows that the judgment of the court below is erroneous, and that it must be

REVERSED.